UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| SHANTELL DUIS, | ) |
|       Plaintiff | ) |
| vs. | )    Cause No. 3:19-CV-142 RLM |
| ANDREW M. SAUL, Commissioner of Social Security, | ) |
|       Defendant | ) |

ORDER

Shantell Duis seeks judicial review of the final decision of the Commissioner of Social Security's decision denying her applications for Disability Insurance Benefits and Supplemental Security Income under the Social Security Act, 42 U.S.C. §§ 423 and 1381 *et seq*. The court has jurisdiction over this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). For the reasons stated below, the court reverses the Commissioner's decision and remands for further proceedings.

Ms. Duis was 25 in January 2016, the alleged onset of disability. She applied for disability insurance benefits and supplemental security income based on narcolepsy without cataplexy, granulomatous disease of the lungs, headaches, bilateral carpal tunnel syndrome, residuals from carpal tunnel surgery in June 2016, obesity, ADHD, depression, and anxiety. She was insured for disability insurance benefits through December 2016. Her application was denied initially, upon reconsideration, and following an administrative hearing in March 2018. The ALJ concluded that Ms. Duis had the residual functional

capacity to perform light work with limitations. She had no past relevant work, but she could perform other work that existed in significant numbers in the national economy, and so wasn't disabled within the meaning of the Act. More specifically, the ALJ found that:

- Ms. Duis had severe impairments – narcolepsy without cataplexy; granulomatous disease of the lungs with continued cigarette smoking; headaches; bilateral carpal tunnel syndrome; status post carpal tunnel surgery in June 2016; obesity; ADHD; depression; and anxiety.

- Ms. Duis's impairments weren't severe enough, alone or in combination, to meet or medically equal any of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App'x 1. The ALJ considered listings 1.02 (major dysfunction of a joint); 12.04 (depressive, bipolar, and related disorders); 12.06 (anxiety and obsessive-compulsive disorders); 12.11 (neurodevelopmental disorders); and SSR 02-1p (obesity). There is no listing for narcolepsy, so the ALJ considered listings 3.00 et. seq. (respiratory disorders); 3.02 (chronic respiratory disorders); 3.03 (asthma); 11.00 et. seq. (neurological disorders); and 11.02 (epilepsy).

- Ms. Duis's testimony "concerning the intensity, persistence and limiting effects of her [her] symptoms [was] not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in [the] decision."

- Ms. Duis had moderate limitations in understanding, remembering, and applying information and in concentrating, persisting, or maintaining pace.

- Ms. Duis had the residual functional capacity to perform light work with additional limitations: she could occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds, and she could occasionally balance, stoop, kneel, crouch, and crawl. She should avoid concentrated exposure to extreme cold and heat, wetness, fumes, odors, dusts, gases, and poor ventilation. She should avoid all exposure to hazards such as dangerous moving machinery and unprotected heights, and she could not drive. She can perform simple tasks, make simple work related decisions, and deal with occasional changes in work processes and environment. She had

2

- the capacity for frequent bilateral handling, fingering, and feeling with the bilateral upper extremities.

- Based on the vocational expert's testimony, Ms. Duis didn't have any past relevant work, but she could perform other work that existed in significant numbers in the national economy, such as laundry worker, sorter, and molding machine tender.

[AR 17-25].

When the Appeals Council denied Ms. Duis's request for review, the ALJ's decision became the final decision of the Commissioner of Social Security. Jones v. Astrue, 623 F.3d 1155, 1160 (7th Cir. 2010). This appeal followed.

Ms. Duis argues that the ALJ improperly discredited evidence of her narcolepsy symptoms and didn't account in the hypothetical or residual functional capacity determination for time spent off-task napping. The court must determine whether the ALJ's decision is supported by substantial evidence, or "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); Jones v. Astrue, 623 F.3d 1155, 1160 (7th Cir. 2010). While the ALJ isn't required "to address every piece of evidence or testimony presented, he must provide a 'logical bridge' between the evidence and the conclusions so that [the court] can assess the validity of the agency's ultimate findings and afford the claimant meaningful judicial review." Jones v. Astrue, 623 F.3d at 1160.

Under the rules that applied when Ms. Duis filed her petition, a treating physician's opinion was entitled to controlling weight if it was well supported by medical findings and consistent with substantial evidence in the record. Johnson v. Berryhill, 745 F. App'x 247, 250 (7th Cir. 2018) (*citing* 20 C.F.R. §

3

404.1527(c)(2)); Brown v. Colvin, 845 F.3d 247, 252 (7th Cir. 2016)). The ALJ concluded that the record didn't support the opinion of Dr. Sriubiene, Ms. Duis's treating sleep specialist. She focused on Dr. Sriubiene's letter to the Social Security Agency, which said, "Symptoms [of narcolepsy] might include extreme drowsiness and falling asleep at any time without warning. Narcolepsy symptoms can significantly interfere with patient's ability to perform day-to-day activities and work." The ALJ reasoned that this opinion wasn't a statement of Ms. Duis's specific symptoms or limitations, but rather a more generic description of narcolepsy. But it seems more likely that Dr. Sriubiene, who had been treating Ms. Duis since 2015, was explaining how Ms. Duis's narcolepsy can disrupt her daily life. The ALJ also concluded that Ms. Duis's narcolepsy had improved with medication, but she didn't cite any evidence in the record that supports that conclusion or describes Ms. Duis's improvement. The ALJ's decision to afford Dr. Sriubiene's opinion little weight wasn't supported by substantial evidence.

The Commissioner argues that the ALJ appropriately accounted for Ms. Duis's need to nap during the day. He notes that the ALJ asked the vocational expert whether a hypothetical person who needed to take a 15-minute nap during an 8-hour workday could perform the jobs listed. The vocational expert said that person could take a short daily nap during her lunch break. But no evidence in the record says Ms. Duis would only need a single 15-minute nap per workday, or that she could wait until a scheduled time to take it. The ALJ

4

didn't create a logical bridge between the evidence and her conclusions about the symptoms and severity of Ms. Duis's narcolepsy.

Ms. Duis next argues that the ALJ's residual functional capacity determination was erroneous because she didn't explain how limiting Ms. Duis to simple tasks, simple work-related decisions, and only occasional changes in work processes and environment accounts for her moderate limitations in concentration, persistence, and pace. *See* Yurt v. Colvin, 758 F.3d 850, 857 (7th Cir. 2014) ("As a general rule, both the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record."). She cites Varga v. Colvin, 794 F.3d 809, 814-815 (7th Cir. 2015), in which the court of appeals ruled that the phrases "simple, routine, and repetitive tasks" and "few if any workplace changes" don't address a claimant's limitations in concentration, persistence, and pace. *See also* DeCamp v. Berryhill, 916 F.3d 671, 676 (7th Cir. 2019).

The Commissioner argues that this case is different from Varga, where the state agency consultants noted the claimant's severe impairments on medical worksheets. 794 F.3d at 816. But this case isn't as different as the Commissioner argues it is. The ALJ's mental limitations were supported by Ms. Duis's diagnoses of ADHD and depression and by a psychological consultative exam that found Ms. Duis had issues with memory and concentration. Just as the claimant's mental limitations in Varga were supported by medical evidence, so were the ALJ's findings here, and the ALJ should have included them in the residual functional capacity determination and hypothetical.

Finally, Ms. Duis argues that the ALJ impermissibly found greater mental limitations than the state psychological consultants. An ALJ can't use his or her own medical knowledge to fill evidentiary gaps in the record, Suide v. Astrue, 371 F. App'x 684, 690 (7th Cir. 2010) (*citing* Blakes ex rel. Wolfe v. Barnhart, 331 F.3d 565, 570 (7th Cir. 2003)), but he "is not required to rely entirely on a particular physician's opinion or choose between the opinions any of the claimant's physicians." Schmidt v. Astrue, 496 F.3d 833, 845 (7th Cir. 2007). As already discussed, the ALJ cited evidence of Ms. Duis's depression, ADHD, and concentration and memory issues. It wasn't an error for her to credit this evidence and conclude that Ms. Duis was more limited than the state psychological consultants said she was.

Accordingly, the Commissioner's decision is REVERSED and the case is REMANDED for further proceedings.

SO ORDERED.

ENTERED:   February 24, 2020

/s/ Robert L. Miller, Jr.
Judge, United States District Court